NATIONAL TRAVEL SERVICES, INC. AND PLAZA RESORTS, INC. D/B/A RAMADA PLAZA RESORTS ORLANDO/FT. LAUDERDALE VACATIONS, PLAINTIFFS V. STATE OF NORTH CAROLINA EX REL. ROY A. COOPER, III, ATTORNEY GENERAL, DEFENDANT

No. COA01-1096

(Filed 1 October 2002)

**Declaratory Judgments— letter threatening legal action—no actual controversy**

The trial court did not err by dismissing under N.C.G.S. § 1A-1, Rule 12(b)(6) plaintiffs' complaint seeking a declaratory judgment to determine whether their advertising package complied with the parameters set by a consent judgment, because: (1) there is no actual controversy to invoke the jurisdiction of the trial court, and courts do not issue anticipatory judgments resolving controversies that have not arisen; and (2) North Carolina courts have historically required more than anticipation of future action based on a letter threatening legal action.

Appeal by plaintiffs from order entered 1 June 2001 by Judge Narley L. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 15 May 2002.

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Robin K. Vinson; Greenspoon Marder Hirschfeld Rafkin Ross & Berger by Gerald Greenspoon, Esq., Richard W. Epstein, Esq., and Robby H. Birnbaum, Esq., for plaintiff appellants.*

*Attorney General Roy Cooper, by Assistant Attorney General Harriet F. Worley, for defendant appellee.*

McCULLOUGH, Judge.

Plaintiffs National Travel Services, Inc. and Plaza Resorts, Inc., d/b/a Ramada Plaza Resorts Orlando/Ft. Lauderdale Vacations, appeal from an order by Judge Cashwell dismissing their complaint for Declaratory Judgment on 30 May 2001.

Plaintiff National Travel is a Nevada corporation that promotes and sells vacation packages throughout the country. Plaintiff Plaza Resorts is a Florida corporation that also promotes and sells vacation packages throughout the country.

The State of North Carolina has had dealings and litigation with plaintiffs prior to this suit. North Carolina, along with fifteen other states and the District of Columbia, filed actions for unfair and deceptive business practices against plaintiffs. All parties settled and consent judgments were filed in the respective states. The North Carolina consent judgment, filed in Wake County Superior Court on 8 February 2000, enjoined plaintiffs from engaging in certain vacation marketing and sales practices used to lure consumers to Florida so they could be solicited to purchase time share properties there. The consent judgment set forth parameters and guidelines for future solicitations and advertisements by plaintiffs. In addition, plaintiffs had to reimburse some previous customers and pay further damages and penalties.

As for the present controversy, plaintiffs developed and prepared a new advertisement package which they believed complied with the parameters set by the consent judgment. Rather than proceed with distribution of the package to the public, plaintiffs submitted it to the North Carolina Attorney General's Office. This was done "to ensure that the Attorney General would not inadvertently bring an enforcement action without thoroughly considering the mailing."

According to the Attorney General's Office, it consulted other states while reviewing the package. On 3 November 2000, it sent a detailed letter to plaintiffs outlining ways in which the proposed solicitations did not comply with the consent judgment. The letter, in pertinent part, read:

> If Ramada Plaza insists on attempting to use solicitations of this type in North Carolina, this office will take whatever action necessary to enjoin their use and seek to have the Court exercise its contempt powers for violations of the Consent Judgment.

Plaintiffs filed a complaint for declaratory judgment on 1 February 2001. Essentially, plaintiffs' complaint asked the trial court to determine whether or not the advertisement package complied with the parameters set by the consent judgment. On 13 March 2001, the State made its motion to dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted on the grounds that this matter is not one that can be determined in a declaratory judgment under the provisions of N.C. Gen. Stat. § 1-253, et seq. On 30 May 2001, the trial court entered an order allowing the State's motion and dismissing the complaint. Plaintiffs appeal.

NATIONAL TRAVEL SERVS., INC. v. STATE EX REL. COOPER

[153 N.C. App. 289 (2002)]

Plaintiffs' only assignment of error is that the trial court erred by dismissing the complaint pursuant to Rule 12(b)(6) in that the record shows that the complaint states a valid claim for relief under Rule 8 of North Carolina Rules of Civil Procedure and that the trial court had jurisdiction over the subject matter of the case.

We hold that there is no actual controversy to invoke the jurisdiction of the trial court, and therefore we need not address the merits of this appeal.

As mentioned above, plaintiff brought this action under North Carolina's Uniform Declaratory Judgment Act, N.C. Gen. Stat. §§ 1-253 through 1-267 (2001). N.C. Gen. Stat. § 1-253 provides that our courts "shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed." N.C. Gen. Stat. § 1-253 (2001). N.C. Gen. Stat. § 1-254 states:

> Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder. A contract may be construed either before or after there has been a breach thereof.

N.C. Gen. Stat. § 1-253 (2001).

In actions involving a request for a declaratory judgment, our Supreme Court "has required that an actual controversy exist both at the time of the filing of the pleading and at the time of hearing." *Sharpe v. Park Newspapers of Lumberton, Inc.*, 317 N.C. 579, 585, 347 S.E.2d 25, 30 (1986).

Our Supreme Court has stated that:

> We have described an actual controversy as a "jurisdictional prerequisite" for a proceeding under the Declaratory Judgment Act, the purpose of which is to "preserve inviolate the ancient and sound juridic concept that the inherent function of judicial tribunals is to adjudicate genuine controversies between antagonistic litigants with respect to their rights, status or other legal relations." *Adams v. North Carolina Dept. of Natural and Economic Resources*, 295 N.C. [683] at 703, 249 S.E.2d [402] at

NATIONAL TRAVEL SERVS., INC. v. STATE ex rel. COOPER

[153 N.C. App. 289 (2002)]

414 (quoting *Lide v. Mears*, 231 N.C. [111] at 118, 56 S.E.2d [404] at 409 [(1949)]). In *Town of Tryon v. Duke Power Co.*, 222 N.C. 200, 22 S.E.2d 450 (1942) this Court acknowledged that, although the actual controversy rule may be difficult to apply in some cases and the definition of a "controversy" must depend on the facts of each case, "[a] mere difference of opinion between the parties" does not constitute a controversy within the meaning of the Declaratory Judgment Act. *Id.* at 205, 22 S.E.2d at 453.

Although it is not necessary that one party have an actual right of action against another to satisfy the jurisdictional requirement of an actual controversy, it is necessary that litigation appear unavoidable. *North Carolina Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 206 S.E.2d 178 [1974]. Mere apprehension or the mere threat of an action or a suit is not enough. *Newman Machine Co. v. Newman*, 2 N.C. App. 491, 163 S.E.2d 279 (1968), *rev'd on other grounds*, 275 N.C. 189, 166 S.E.2d 63 (1969). Thus the Declaratory Judgment Act does not "require the court to give a purely advisory opinion which the parties might, so to speak, put on ice to be used if and when occasion might arise." *Town of Tryon v. Power Co.*, 222 N.C. at 204, 22 S.E.2d at 453 (1942).

*Gaston Bd. of Realtors, Inc. v. Harrison*, 311 N.C. 230, 234, 316 S.E.2d 59, 61-62 (1984).

Plaintiffs, in their briefs and at oral argument, stress the letter from the Attorney General's Office and argue that it shows litigation is unavoidable, and thus an actual controversy exists. This argument fails. Our courts have historically required more than anticipation of future action. *See Wendell v. Long*, 107 N.C. App. 80, 418 S.E.2d 825 (1992); *Town of Pine Knoll Shores v. Carolina Water Service, Inc.*, 128 N.C. App. 321, 494 S.E.2d 618 (1998). In an analogous case, a party sent a letter to the opposing side stating that he would " 'take such actions as are necessary to protect myself . . . from harm by the actions of individuals involved in this matter.' " *Gaston Bd. of Realtors*, 311 N.C. at 235, 316 S.E.2d at 62. The Supreme Court held that "litigation between the parties does not appear unavoidable and that the controversy between them is not therefore actual, genuine and existing." *Id.* The *Gaston* Court further noted that

[i]t is true that the defendant in seeking a rehearing before the Board stated in a letter that he would take whatever actions necessary to protect himself. That statement does not in and of

itself point to unavoidable litigation and the existence of an actual controversy. Although the defendant did not specify what action he intended to take to protect his interests, he never mentioned filing a lawsuit. *Even if the defendant had directly threatened to sue the Board, a mere threat to sue is not enough to establish an actual controversy.*

*Id.* at 235-36, 316 S.E.2d at 62 (emphasis added).

Plaintiffs' complaint is rife with words such as "could," "may," and "would" in reference to the advertisement package it has yet to send out and the legal action which the Attorney General's Office has threatened but not yet brought to bear. Our case law mandates the affirmance of the trial court's order of dismissal.

In addition, we note that granting jurisdiction and allowing a declaratory judgment to be rendered in this case would arguably not settle anything between the parties. We cite with approval the Texas case of *California Products, Inc. v. Puretex Lemon Juice, Inc.*, 160 Tex. 586, 334 S.W.2d 780 (1960). In that case, the plaintiff sought a declaratory judgment as to whether or not a bottle in which it planned to market lemon and lime juice would violate the terms of a permanent injunction which defendant had obtained in an earlier suit in which plaintiff had been enjoined from marketing juice in a bottle resembling that used by the defendant. The Texas court held that the adjudication sought was but an advisory opinion and therefore not a proper subject for declaratory judgment action, and noted that:

> A declaratory judgment rendered herein would not settle the controversy between the parties. The permanent injunction . . . is still outstanding. A violation of that judgment is subject to be punished for contempt in a proper proceeding. It cannot be determined whether or not a proposed bottle will be violative of the injunction . . . until [plaintiff] seeks to market its product in a bottle in the same market with [defendant]. Only in this way can it be determined whether the [plaintiff's] bottle is of the size and appearance that it misleads and deceives the buying public into believing that it is securing [defendant's] products rather than [plaintiff's] products.

> We agree with the Court of Civil Appeals that this proceeding is one in which an advisory opinion is sought. Should we decide that the bottle proposed to be used by [plaintiff] did violate the injunction, we would settle nothing. [Plaintiff] could continue

·indefinitely to propose bottles of different sizes, shapes and colors on which it could seek an equally indefinite number of advisory opinions as to whether such bottles violate the injunction. Such procedure would accomplish nothing. [Plaintiff] should propose a bottle which it thinks does not violate the injunction, use it and litigate the material issue on a contempt hearing.

*Id.* at 591, 334 S.W.2d at 781.

"The courts of this state do not issue anticipatory judgments resolving controversies that have not arisen." *Bland v. City of Wilmington*, 10 N.C. App. 163, 164, 178 S.E.2d 25, 26 (1970), *rev'd on other grounds*, 278 N.C. 657, 180 S.E.2d 813 (1971). While plaintiffs are seemingly legitimately seeking to comply with the consent judgment they are bound by, "[t]he Uniform Declaratory Judgment Act does not license litigants to fish in judicial ponds for legal advice." *Lide v. Mears*, 231 N.C. at 117, 56 S.E.2d at 409.

Affirmed.

Judges WALKER and BRYANT concur.